Good morning, counsel. May it please the court, excuse me, James Thiebaud, Deputy County Counsel for Sheriff's Deputy Charles Nichols. We've asked for review of two questions. One is the denial of qualified immunity as to reasonable suspicion to detain on the warrant, and two is the denial of qualified immunity as to the use of force in handcuffing. Our overarching point is that this court will search in vain McGuigan's brief and the district court ruling as to any ruling, any closely analogous precedent, any consensus among the circuits as to the unlawfulness of the alleged actions here, and any case law showing that what we have here is an obvious violation of the law. Basically, Your Honor, Your Honors, the district court's failure to address the immunity under those three tests is a denial of immunity. It doesn't matter if the district court finds material issues a fact. Well, just so that we're all on the same page here, as I understand it, there's no issue there because everybody agrees what the facts are. They've stated what they are, you've agreed with them, or vice versa, I can't remember which it is, but there's no dispute about the facts. This is a pure issue of law, right? I agree. Okay, under the circumstances. So then the question becomes... Is there a case? That's what we're talking about, right? The question becomes, on plaintiff's version of the facts, is there an obvious violation of the law in the detention? As to the detention, the agreed facts are Deputy Nichols goes to the house with an arrest warrant, felony arrest warrant. It has the same street number and address as the house he's at, and it's the only one in Rancho Cucamonga with that same street number. One was a boulevard, one was a street, right? No. There was a difference? No. There was a difference in zip code. I thought there was a difference between street and boulevard. Let me just double check. As I understand it, the warrant was for a residence at 8411 Hawthorne Street, and it gave the wrong zip code for that. The warrant provided a zip code where there was only 811 Hawthorne Drive. In other words, the drive and street were different, wrong zip code as well, right? Yes. What is undisputed is that there's only one 8411 Hawthorne in Rancho Cucamonga. So Nichols goes to that address. McGuigan comes out onto the porch. He's the same age, roughly the same age. He's the same race, same gender. And Nichols begins to make inquiries about his identity. McGuigan refuses. There's a discussion, and this again is uncontroverted, there's a discussion about why Nichols is there. He's there to serve a felony warrant for robbery. McGuigan knows this. He continues to refuse to provide identity. Also undisputed that Deputy Nichols had never met McGuigan before. So this person is unknown to him. One thing I was a little unclear about, is it correct that the officer, as it turns out, knew the daughter of McGuigan? Is that correct? That's incorrect. It is correct, okay. He had never met Plaintiff McGuigan before. Right, I understand. Now what happened was, after McGuigan was placed in the patrol car, McGuigan brought up the subject of his daughter. And it so happens that Nichols had met a female in that house previously, but he had no way of connecting that to Plaintiff McGuigan. So you're saying it is an interesting but irrelevant fact. Correct. It's immaterial. And even if you presume that he might have made the connection in his mind, then you have a question of the level of his knowledge. It's not reliable information. So it's not material. What you're getting to, I gather, and we're just trying to preserve your time a little bit, what you're saying is this was a reasonable mistake, right? Correct, Your Honor. The question is, if an officer, if a reasonable officer in these circumstances makes a reasonable mistake, does that constitute a violation of the constitutional rights of Mr. McGuigan? Is that right? What we're saying, Your Honor, is really no reasonable officer in Nichols' place would believe that reasonable suspicion to detain on the warrant was lacking. So now the legal standard is they have to show obvious violation. We need an obvious lack of reasonable suspicion to detain on the warrant. But we're at the other end of that spectrum. Is it detention on the warrant for possibly being the subject of the warrant as well as possibly harboring or just the first one? Well, both, Your Honor. He's investigating the identity of McGuigan in relation to this warrant. And then there's the other possibility of harboring as well. So now there have been citations to differences in height, 4 inches, weight, 35 pounds, the hair color, the eye color. But we'd ask the court to look at, we've cited three decisions from three separate circuits, which we think just put to rest the idea that these kinds of differences would even make a difference if what we were talking about was probable cause to arrest on the warrant. We're just talking about reasonable suspicion here, not probable cause, which is a higher standard. Ultimately, there was an arrest, though. Yes, there was. Based on the warrant. And so there had to be probable cause at that point. The probable cause was the subject of the grant of qualified immunity in the district court, which was McGuigan's refusal to identify himself. And that provided probable cause to arrest on the 148. The obstructing or delaying of the officer. But that, of course, the arrest itself depends on a lawful detention. So that's why we're before the court today. I'm assuming for the moment that there was a permissible detention here based on what the officer had. Right. And so I'm getting to the case of the arrest and what the probable cause for the arrest is here. And you're relying on the warrant and some common characteristics with the target of the warrant. Okay. The arrest itself was not based on McGuigan matching the warrant. So the arrest wasn't on the warrant itself. The actual arrest was on McGuigan's repeated refusal to identify himself in response to lawful inquiries. I have a question on the 148, Mr. McGuigan. Is it McGuigan or McGuigan? McGuigan. McGuigan, okay. Mr. McGuigan wants us to have pendant jurisdiction to review how Penal Code Section 148 is to be construed. Right. We don't have jurisdiction to do that generally because this is an interlocutory appeal without some special reason to be here. But on the other hand, you're saying that there was probable cause to arrest him for violation of 148. Does that bring us to the same place? Are we required to construe the meaning of 148? Or for purposes of this inquiry, i.e., qualified immunity, we should simply say, okay, the reasonable officer in this case knew about 148. I think he called somebody, didn't he, before he made the arrest? Or was that afterwards? That was after. Okay. So he made the arrest based upon his understanding that he could make an arrest for 148, right? Correct, Your Honor. And is that all that's necessary for him to have qualified immunity on that basis? The way it goes, Your Honor, is if there's a lawful detention and then following the lawful detention, a refusal of the person to identify themselves in response to lawful inquiries from the officer, as there was in this case, then the officer may arrest on the 148 for obstruction and delay of the officer. What happened in the district court was the district court granted qualified immunity on the arrest question, i.e., whether there was probable cause to arrest for a refusal to identify themselves. And, of course, we had a legal question there, which we contend is not before this court on penitent jurisdiction. The only issue is, should this officer have qualified immunity for reasonable suspicion to detain? If so, the case is over on the false arrest. So even if, and I'm just really being hypothetical here, but even if we were to conclude that 148 was not constitutional, I'm not saying that, but just say we did, that doesn't matter for purposes of our analysis because all the officer has to show is that he had probable cause to arrest for violating PC 148. He knew nothing to the contrary about the validity of 148, right? I think what we're doing is we're taking the information known to the officer, which is that this person is refusing to identify themselves in response to his inquiries. And then we ask the legal question, regardless of his state of mind, does that provide probable cause? And if not, is he entitled to qualified immunity? In other words, again, this is all arguendo. If he knew that 148 had been found unconstitutional, he wouldn't have any basis for having probable cause to arrest based upon 148, right? Only if it indeed had been found. No, I understand that, but I'm just saying in this case, I'm just seeing where this goes. Right. For purposes of the county's position, though, you're saying there was no such thing as far as Officer Culver was concerned. This was a valid statute. He had probable cause because Mr. McGuigan refused to identify himself. He later talked to his supervisor, went forward with it, but he had probable cause for doing it because he hadn't identified himself. Is that right? Correct, Your Honor. Okay. Can you address the excessive force? Sure. The undisputed fact here is McGuigan says, can you adjust my handcuffs? Our point, Your Honors, is that what we need is a case, because this is a prior case law, is all involved in a complaint of pain and or showing of injury from the handcuffing. What we have here is a denial of immunity based on McGuigan saying, you know, are you going to adjust my cuffs? What about the shoving against the wall? Well. What was the – what reasonable basis was there for that level of force in these circumstances? Well, Your Honor, my recollection of the – maybe there was a shoving, but we just don't think that a shove or a push is excessive force. You know, under Graham v. Conner, not every push or shove is excessive force. There's no showing of injury. I just – it's. We know taking to the ground can be excessive force if there's no reasonable basis for that. In other words, what – the officer could have just simply said, turn around, put your hands behind your back. Well, you know, I mean, there's different degrees of shoving, which I don't think we have any evidence on here. I mean, an officer can turn somebody around rather roughly and then push them in the back against a wall. I just – I don't think that makes out an excessive force case. Well, there was evidence that that was what Niedermeyer complained of. You don't mean Niedermeyer. McGuigan. Oh, I'm sorry. McGuigan. McGuigan. This is what McGuigan complained of, right? That he was shoved up against the wall, his arm twisted, and then the handcuffs applied. Yeah, I thought it was the handcuffing, Your Honor. Yeah, I think the arm twisting was in the complaint, but I didn't see it in this declaration. And I don't think it was in the briefing either. Do you want to save any of your time? You're down to 41 minutes. Okay, I'll reserve it. Okay. Very well, we'll hear from counsel for Mr. McGuigan, right? Yes. May it please the Court. Brenton Akinhans from the Law Office of Jury Steering on behalf of the Pele, Mr. McGuigan. So, Your Honors, I'd like to first address the jurisdiction issue. So, as I noted in our brief, this Court lacks jurisdiction if there are disputes of material fact, and that was the basis for the District Court's denial of qualified immunity. As you've heard— Wait a minute. We lack jurisdiction if there is a dispute about material facts? Yes, if the— You mean based on the qualified immunity question? Yes, under the collateral order doctrine. This Court has jurisdiction if there are no disputes of material fact, and in that case, the Court can wade in on— Counsel, with respect, I think you're confusing some things here. Do you have any question that we have jurisdiction to consider on an interlocutory basis whether an officer has been improperly denied qualified immunity? Any question in your mind at all about that? Yes, Your Honor. Okay. So, as you heard Defendant's counsel state, he has some disagreements about what the facts are. So, he disagrees about, for example, whether they had discussed that he actually knew Mr. McGuigan based off knowing his daughter. There was some disagreement about, you know, the tightening of the handcuffs, and there were many other disagreements, all of which were enumerated in the brief. Now, I— So, are you saying that we have no jurisdiction to consider whether qualified immunity is due if there are allegations of material fact that are in dispute? Yeah, where that was the basis— Doesn't that completely do away with any possibility of getting somebody qualified immunity? All anybody that made an accusation of excessive force would have to say is, I disagree about this, this, this, and this. You have no jurisdiction in the Court of Appeals. Well, if it's a genuine dispute, yes. If somebody is making, you know— That's in the eye of the beholder, isn't it? Yeah, but if the Court below assesses whether there's a genuine dispute, and that was the case here. Now, I have cited some cases, and I think it might be appropriate here to maybe— Well, we can review the wrongful denial of qualified immunity. And were you here in the last argument, Mr. Niedermeyer's case? Were you sitting in the courtroom? Yes, I was. So you have the benefit of what we're really focusing on in answering these qualified immunity questions, which is clearly established law that would tell the officer that under the facts now construed in your client's favor— Right. —would tell them that it's not constitutional. So focusing now on your excessive force claim, what do you have in terms of the facts, and then we'll talk about clearly established law, that would tell a reasonable officer the way he conducted himself under these circumstances is excessive force? Well, what we have here is there was an allegation that he tightened the handcuffs until they caused pain. Did he ever communicate to the officer that he was in pain? Yes, he did. And when he got to the car, he asked him if he could loosen the handcuffs. He asked him if he could loosen the handcuffs. Did he ever communicate to the officer that the handcuffs was causing him pain? That was apparent from the situation, yes, that they're causing pain, and also given the— But so the answer is no, because I'm trying to find your allegations of the facts in the record, and I couldn't find—it's certainly not in his declaration, and I didn't see it in the deposition. So you have a specific deposition site that he communicated the fact that he was in pain to the officer. That would be very helpful. When he asked that if he could loosen the handcuffs, the implication is that the handcuffs are too tight. Now, whether he used the term pain or whether he said, oh, my gosh, this is killing me, no, he didn't describe it in those terms. But he did ask, can you loosen the handcuffs? Okay. And the twisting of the arm allegation is in the complaint, but, again, I could not see it in the declaration or the deposition. What would be in the record here would be—those are the disputes that we're relying on. And there are cases that discuss— No, no, no. Disputed facts mean there has to be a fact in the record for there to create a dispute. Whether the handcuffs were too tight and whether he tightened them— What about the twisting of the arm? The twisting of the arm is also something that is, you know— Is it in his declaration or deposition transcript? Off the top of my head, I don't—that's not one of the facts that I had been relying on. The tightening of the handcuffs until it's too tight, there's established law in the circuit about that being excessive force, where it's not warranted, and especially where the plaintiff has asked them and put the officer on notice here. But, counsel, you've not answered my colleague's question. She's asked with respect to the cuffs and with respect to the twisting of the arm. You, I think, by saying—by not giving us an answer, are saying there's nothing directly in the record. One of the problems you have in this case, frankly, is that, unlike most of the cases we get where qualified immunity is involved, apparently your version of the facts has been accepted by the county, essentially. That is not— You don't have disputed facts here. You have different views of what those facts mean, but you don't have disputed facts. It is our position that there are disputes of what the facts are. And from what I heard counsel representing to you a few moments ago, he wants you to adopt what he says are the undisputed facts, when there are disputes of facts. Well, let me sum up what I understand to be the undisputed facts, viewed in the light most favorable to your client. He asks him to turn around. He shoves him against the wall. He handcuffs him. He takes him to the car. Mr. McGowan says, will you loosen the handcuffs, but doesn't communicate that he's in pain. Am I getting the extent of it? Are there any facts that are in the record, either by way of declaration or as deposition testimony, that I missed in that equation? It is our position that asking to loosen the handcuffs, the implication is quite clear. Sure. No, I understand the inference. I'm trying to focus on whether there are any additional facts that I could utilize in determining whether there's clearly established law that would tell an officer that's not reasonable that I missed. Right. So if they are, this is your opportunity to point them out and take them into account. Whether the cuffs were double locked, so that is another dispute. Now, obviously, if cuffs are not double locked, then they tighten. If somebody is, for example, put in the back of a patrol car and they roll around, then the tufts will, if they're not double locked, will tighten further, and the cuffed person has no way to loosen it, and it can cut off circulation. It can cause all sorts of... And these were double locked or were not? There's a dispute of fact as to whether they were double locked. Now, I understand you wanted to talk about the excessive force. The big issue... Right. So let me just finish that thought, so there are no additional facts, right? So let me now switch you to the law. Under those facts, as we've been discussing, is there a case that would tell the officer that his conduct is unreasonable or excessive force? And what's your best case for that? We have Meredith v. Erath, which we cited in our brief. We have Thompson v. Lake, which was cited by the district court. And also, I want to make this point about having a case that is exactly 100% on point. There are many, many cases that involve handcuffing and whether that can be excessive force. Whether it's the exact same factual scenario, I think we can all agree that you're never going to have the exact same factual scenario. It doesn't have to be exactly the same. Right. Just sufficiently similar, not at too high of a level of generality. Right. But that also changes with regard to the stakes of the situation. So, for example, White v. Polley would be one of the recent qualified immunity pronouncements from the district court. That was a deadly force case. That involved a shooting with an officer who had to act quickly. And this is a different type of a scenario. So, therefore, whether an officer can be on notice from a general case, it's more plausible in a scenario where the officer isn't compelled to act quickly because there's a threat of violence or somebody attacking the public. But with respect, counsel, as my colleague has pointed out to you, there's no express allegation by your client that he said the cuffs are hurting me or you're hurting my arm. The cases that would maybe help you, those kinds of things are said. It's not implied. So, what you leave us with without that is would a reasonable officer in Caldwell's situation know that he was violating your client's constitutional rights? You mean Nichols? I'm sorry, Nichols. I apologize. That was a previous case. We have all these cases. I understand. You have so many. I apologize. Not Caldwell. Nichols. It is our position that if you ask the officer to loosen the cuffs, you're telling him that it's too tight and that it's hurting you. But you can't give us a case, though, where the court has said that if you don't impute that, you're violating the constitutional rights of the person who is being cuffed, right? That might be an issue of fact as to whether that he was – take my suggestion that asking the officer to loosen the cuffs is telling him that it's too tight. But the fact is the case law suggests that the Supreme Court is concerned that for officers in the field, only those who are – I think they said basically who are plainly incompetent or just outlaws basically would take this action, whatever the action might be, because it was so clearly violative of the constitutional rights of the person involved. Tightening until they cause pain for the purpose of causing pain because there's a personal – But it's not subjective. The question is really what were they told? And in this particular case, I don't know how I can say that your client avoids qualified immunity if there's nothing said. This is causing me pain. I don't know of any case that lets me do that. I'd like to help. I really would because I appreciate this problem. It's a very serious problem in our court system. How to balance the qualified immunity rights of officers who put their lives on the line – very serious and important job – Agreed. Versus excessive force. It's a really difficult problem. But the Supreme Court in White v. Pauley most recently have given us our marching orders. And they say not at a high level of generality, as my colleague has indicated. They have to know. What is it that Nichols should have known in this situation that would have been absolutely obvious to him that if he did it, he was violating your client's constitutional rights? Under the circumstances, there's a tribal issue of fact as to whether – But we don't get to that. That's the problem. Under the qualified immunity doctrine, unless you have a case that's pretty darn close, we don't get to trial. I understand you want to go to trial. And I understand why you want to go to trial. But the reality is we never get there unless the facts are of such a nature that they're really – against the non-moving party that only an idiot officer would have done what that person did. I think the Supreme Court has been very clear that when an officer is going – for purposes of qualified immunity, when he's going out of his way to do things like cause pain that are out of the purview of enforcing the law, that's not the type of thing that qualified immunity is meant to protect. It's not supposed to be a freebie for somebody – for an officer just because he happens to be wearing a badge and enforcing the law, which, by the way, is an extremely important job. But when you are handcuffing somebody and they tell you that it's too tight – or sorry, they say, please loosen – They don't say that. And I want to be careful here. It's not the quote itself, though. It's whether he's telling the officer. The officer is on notice. And under these factual circumstances, I would – It's just – your position really puzzles me because you're saying essentially that if you are at a house to serve a felony arrest warrant and someone is arrested for 148 and that person is handcuffed and that person says, oh, the handcuffs are too tight, there's clear case law that a reasonable officer – not this one – but a reasonable officer would have to then loosen the cuffs without any additional complaints. That's why I'm searching for additional facts that would tell an objective officer that what he was doing was unreasonable under clearly established law. Whether the cuffs are double-locked is one of them. Another one of them would be the way that he put him in the car, the position that he put him in, which we did discuss in the brief, causing the pain in his neck. But again, no complaints of that. Like how would the officer – how would a reasonable officer know that? A reasonable officer, to be quite frank with you, our argument is that he would not have tightened the handcuffs until they caused pain. And he wouldn't have handcuffed our client in the first place under these circumstances because they are trained by statute. They must be trained that you can't arrest someone just for failing to ID themselves. But if you don't have the language that my colleague referred to, how do you cabin this? I mean basically whatever any officer does can be gainsayed by somebody who doesn't like to be arrested. Oh, that's – Even if they don't say anything. But say you've got somebody who's a gang member or something who's really tough and strong, would never dream of saying these are too tight. There must be a genuine dispute. But the reality is that the case law says, unless you don't – if you don't say that, how is the officer to know that something has to be done? If you ask the officer to loosen the cuffs, our position is that that is enough to put the officer on notice that these handcuffs are too tight and they're causing something to be done. We appreciate your argument. I had other points. I appreciate that. But under our system, you've got a clock there, and the clock has now run out of time. So we appreciate your argument, and we have your briefs, of course, and we will take all of that into consideration. Thank you, Your Honor. Thank you. I think opposing counsel has a little bit of time left here. Very quickly, Your Honor, the case that McGuigan relies on on the excessive force claim is Meredith. In that case, the plaintiff repeatedly complained that the handcuffs were causing her pain, and there was evidence of extensive bruising. We did provide a cite to what McGuigan actually said, which is, can someone adjust my cuffs for me? And that was on page 10 of our reply brief, SCR 82 at 2631. And I will submit, unless there's any other questions by my colleague. I don't have any. Thanks, counsel, for your arguments. We appreciate it. These qualified immunity cases are almost a plague of our existence for everybody. I know that the counties and the people who are representing these folks are. It's a plague of ours. I'm sure it is. It's really tough, but that's where we are. Supreme Court has put us there. Anyway, we thank you all for being here today. The court stands in recess for the day.
judges: M. Smith, Nguyen, Settle